| | |
|---|---|
| VICTOR J. VELASCO,<br>Plaintiff,<br><br>v.<br><br>SCOTT SEMPLE, et al.,<br>Defendants. | No. 3:19-cv-811 (KAD) |

# INITIAL REVIEW ORDER

**Preliminary Statement**

Plaintiff, Victor J. Velasco ("Velasco"), currently confined at Northern Correctional Institution ("Northern") in Somers, Connecticut, filed this complaint *pro se* under 42 U.S.C. § 1983. Velasco names 137 defendants[1] including employees of the Department of Correction,

---

[1] Scott Semple, Scott Salius, John Aldi, Marco Fiore, Sarah Skribiski, Angela Maiorana, Counselor Tucker, Gregorio Robles, Counselor Supervisor Blanchard, Investigator Rule, Bruce Richardson, Marc Congelos, Kristen Mangiafico, Correction Officer Henry, William Mulligan, William Faneuff, Jason Beebe, Derrick Molden, Nick Rodriguez, Correction Officer Makay, Daniel Dougherty, J. Dousis, Christine M. Whidden, Carol Chapdelaine, Guiliana Mudano, Lieutenant Johnson, Captain Sharp, Correction Officer Madden, Correction Officer White, Lieutenant Tuttle, Correction Officer Bolduc, Correction Officer Schold, Angel Quiros, Dr. Paul Chaplin, Carson Wright, R.N. Burgmeyer, Lisa Fryer, Counselor Moore, Carlene Davis, Counselor Jahic, Jessica Bennett, Lieutenant Ogando, Lieutenant Roy, Investigator Gonzalez, Counselor Landolina, Correction Officer Laggasey, Jennifer Deko, Antonio Santiago, W.C. Sparks, D. McNeil, Investigator Melendez, J. Paine, Counselor Rembish, Lieutenant Lark, Lieutenant Wiggin, John Albanese, State Trooper Stebbins, Joseph Lamotte, Correction Officer Roy, Peaches Hall, Monica Farinella, Henry Crabbe, Steven M. Barry, Janine Brenan, Marna Henderson, Patrick Ward, Sean Guimond, Brian Jackson, Investigator Jasion, Craig Washington, Captain Black, Correction Officer Ferguson, Lieutenant Holloran, Michelle King, Purvi Lakani, Alphonso Lindsey, Captain Baymon, Captain Rivera, Ken McKrystal, Michael Clements, William Longo, Edward Maldonado, Walter C. Bansley IV, Cheryl C. Straub, Kieth Anthony, Correction Officer Michaud, Christen Lozi, Angela Cortezi, Nicole Paradis, Lieutenant Brown, Anjeanette McKenzie, Correction Officer White, C.C. Hesse, S. Patterson, Pauline Ogarro, Mathew Eggen, Captain Shabainus, Mark Frayne, Administrative Remedies Coordinator Oulete, Kimberly Weir, Correction Officer Velasquez,

the University of Connecticut Health Center, and the Department of Public Safety; an Assistant Attorney General; a court reporter; and employees at Inmates' Legal Aid Program. Velasco asserts claims pursuant to 42 U.S.C. § 1983 for violation of his rights under the First, Fourth, Fifth, Sixth, Eighth and Fourteenth Amendments and the Americans with Disabilities Act. Doc. No. 1, ¶ 10. He also references the Religious Land Use and Institutionalized Persons Act, the Prison Rape Elimination Act, the Health Insurance Portability and Accountability Act, the Prison Litigation Reform Act, and 42 U.S.C. §§ 1981,1982, 1985 and 1986. *Id.*, ¶¶ 27-28. The complaint was received on May 28, 2019, and Velasco's motion to proceed *in forma pauperis* was granted on June 24, 2019.

**Standard of Review**

Under section 1915A of title 28 of the United States Code, the Court must review prisoner civil complaints and dismiss any portion of the complaint that is frivolous or malicious, that fails to state a claim upon which relief may be granted, or that seeks monetary relief from a defendant who is immune from such relief. *Id.* In reviewing a *pro se* complaint, the Court must assume the truth of the allegations, and interpret them liberally to "raise the strongest arguments [they] suggest[]." *Abbas v. Dixon*, 480 F.3d 636, 639 (2d Cir. 2007). *see also Tracy v. Freshwater*, 623 F.3d 90, 101-02 (2d Cir. 2010) (discussing special rules of solicitude for *pro se*

---

Commissary Officer Correa, Christine Doe, W. Gillian, Heidi Greene, Rikel Lightner, Counselor Vereen, Heidi Whitely, Michael P. Burdo, John Dumas, Ursula Knight, Ron LaBonte, A, Mankhan, Dr. Naqvi, Correction Officer Deary, Counselor Supervisor Lacy, Counselor Lane, Lieutenant Perez, Correction Officer Signon, Lieutenant Squires, Deacon Robert Bernd, Counselor T. Blue, Reverend A. Bruno, Captain Cavanaugh, Jessica Garcia, Counselor Kay, Correction Officer Quinlan, Lieutenant Saylor, Investigator S. Wilson, Nurse Brown, Director of Health & Addiction Services Degner, Counselor K. Diciocio, Health Services Supervisor Margo Guff, Correctional Treatment Officer Hawthorne, Victoria Kilham, Lieutenant Squires, and Lieutenant Alexander.

litigants). Although detailed allegations are not required, the complaint must include sufficient facts to afford the defendants fair notice of the claims and the grounds upon which they are based and to demonstrate a right to relief. *Bell Atlantic v. Twombly*, 550 U.S. 544, 555-56 (2007). Conclusory allegations are not sufficient. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.

**Allegations**

Velasco is 43 years old. He suffers from Asperger's Syndrome, a form of autism. Doc. No. 1, Statement of Claims, ¶ 25.

On March 6, 2018, in the presence of Warden Nick Rodriguez, Velasco informed Commissioner Semple of his various claims. The next day, Warden Rodriguez emailed John Aldi about the conversation. Doc. No. 1, Statement of Facts ¶ 1. Aldi acknowledged the email. *Id.*, ¶ 2.

On January 17, 2011, Velasco filed an administrative remedy regarding his religion of Kingism, exercise, and medical issues. Then-warden Angel Quiros responded to the grievance on January 21, 2011. *Id.*, ¶ 3. Quiros directed Velasco to contact Religious Services regarding concerns about his religion or religious affiliation. *Id.*, ¶ 4. On January 24, 2011, Velasco submitted a request to Religious Services asking that his religious designation be changed to Kingism. *Id.*, ¶ 5.

In January 2019, Velasco received by mail over 2000 documents from Department of Correction files. One document addressed to John Aldi from Religious Services and dated March 16, 2011, stated: "'Kingism'—a religion/code of conduct that the Latin Kings (gang)

3

follow and obey. -the above is a direct quote from one of the Google sites. 'Kingism'—Google it—lots of hits." *Id.*, ¶ 6.

Velasco alleges that Aldi deliberately concealed this document from him in 2011 to initiate disciplinary proceedings against Velasco because Velasco had filed a federal lawsuit against Aldi's friends and co-workers. *Id.*, ¶ 7. Velasco claims that the concealment of this document prevented him from pursuing a claim regarding his religion in 2011. *Id.*, ¶ 8.

On March 16, 2011, Reverend Bruno submitted a contraband/physical evidence tag and chain of custody document to Aldi regarding the request for designation of religion. *Id.*, ¶ 9. On March 28, 2011, Velasco was granted leave to proceed *in forma pauperis* in a federal court action. *Id.*, ¶ 10.

The next day, Aldi issued a disciplinary report for Security Risk Group ("SRG") or gang affiliation. He did not reference the March 16, 2011 note which Velasco considered exculpatory. *Id.*, ¶ 11. S. Wilson was the investigator on the disciplinary charge. *Id.*, ¶ 12. He recorded three witnesses requested by Velasco, obtained a witness statement from Warden Quiros, and obtained supplemental reports from Reverend Bruno and Robert Bernd. *Id.*, ¶ 13. Bernd states that Kingism was not a recognized religion. Velasco alleges that *he* recognizes Kingism as a religion and assumes that the note indicated that the Department of Correction recognized Kingism as a religion after the Google search. *Id.*, ¶ 14. The investigator's report does not reference the Google search results. *Id.*, ¶ 15.

Velasco chose Counselor Kay as his advocate. *Id.*, ¶ 16. Counselor Kay initiated his advocate's investigation on April 6, 2011 but did nothing. *Id.*, ¶¶ 17-18. Counselor Kay recommended a guilty finding. *Id.*, ¶ 19. He did not appear at the disciplinary hearing. *Id.*, ¶

4

20.

Lieutenant Alexander falsely stated on the Disciplinary Process Summary Report that Correctional Treatment Officer Diciocio was present as Velasco's advocate. He was out of the country on the day of the hearing. *Id.*, ¶¶ 21, 24. He did not list the March 16, 2011 note as evidence used at the hearing and did not consider it in making his decision. *Id.*, ¶ 23. Lieutenant Alexander relied only on Aldi's report that Kingism is an ideology associated with the SRG Latin Kings. *Id.*, ¶ 26. Although a continuance to obtain a witness statement is referenced in the report, no witness statement was submitted. *Id.*, ¶ 38. Velasco filed an appeal which was never addressed. *Id.*, ¶ 39.

Velasco alleges that he is not a member of any group called "Latin Kings." Rather, he is a member of the "Almighty Latin Kings and Queens Nation." He contends that there has been no group in Connecticut called "Latin Kings" for over twenty-five years. *Id.*, ¶ 29. He was not forced to be a member and can withdraw from the group at any time without threat of retribution or retaliation. *Id.*, ¶¶ 31-32.

**Discussion**

When conducting the initial review under section 1915A, the Court may consider Rule 8 of the Federal Rules of Civil Procedure, which provides that the complaint shall contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The "principal function" of the pleading requirements embodied in Rule 8 of the Federal Rules of Civil Procedure "is to give the adverse party fair notice of the claim asserted so as to enable him to answer and prepare for trial." *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988). When a complaint does not comply with Rule 8's requirements, "the court has the power, on its

own initiative . . . to dismiss the complaint." *Id*. "The key to Rule 8(a)'s requirements is whether adequate notice is given." *Wynder v. McMahon*, 360 F.3d 73, 79 (2d Cir. 2004). "[F]air notice [is] that which will enable the adverse party to answer and prepare for trial, allow the application of res judicata, and identify the nature of the case so that it may be assigned the proper form of trial." *Id.* (internal quotation marks omitted). Rule 8 requires a plaintiff to "disclose sufficient information to permit the defendant 'to have a fair understanding of what the plaintiff is complaining about and to **know whether there is a legal basis for recovery**.'" *Kittay v. Kornstein*, 230 F. 3d 531, 541 (2d Cir. 2000) (emphasis added) (quoting *Ricciuti v. New York City Transit Auth.,* 941 F.2d 119, 123 (2d Cir. 1991)). For these reasons, dismissal can be appropriate when a complaint is so "confusing as to 'overwhelm the defendants' ability to understand or to mount a defense.'" *Warner Bros. Entm't Inc. v. Ideal World Direct*, 516 F. Supp. 2d 261, 269 (S.D.N.Y. 2007) (quoting *Wynder*, 360 F.3d at 80).

The Complaint here simply does not withstand Rule 8 scrutiny. Within the "Statement of Facts," Velasco includes paragraphs asserting conclusory claims against large groups of defendants. For example, he asserts that twenty-nine listed defendants have denied him medical care and falsified documents regarding his medical condition and treatment to facilitate his continued confinement in the SRG Program, Doc. No. 1, Statement of Facts, ¶ 40. He asserts that ninety-nine listed defendants are aware of arbitrary punishment and arbitrary disciplinary proceedings, life-threatening conditions of confinement including forced punishment, torture, isolation, and permanent segregation at Northern Correctional Institution, deliberate indifference to medical and mental health needs, and retaliation, *id.*, ¶ 41. And he asserts that the same ninety-nine defendants denied him medical care at Northern leading to permanent physical injury. *Id.*

6

Velasco then asserts that **all** defendants have contrived to silence Velasco and have placed him in the SRG Program in retaliation for filing a civil lawsuit, *id.*, ¶¶ 46, 48.

Similarly, in the "Statement of Claims," Velasco describes broad categories of claims against "defendants." Again, he provides few facts to support many of the claims, fails to specify actions taken by any particular defendant, and fails to allege when the incidents occurred. For example, in paragraph 18, which runs for five pages, Velasco generally describes claims challenging the provision of medical care, failure to properly respond to requests and grievances, the organization of the SRG Program, deliberate actions exposing him to assault by other violent inmates also in the SRG Program, improper use of federal funds, requiring him to participate in a "cognitive treatment program," conditions of confinement in the SRG Program, theft of property, and denial of the right to practice his religion. He also references gender discrimination, sexual harassment, denial of due process, excessive force regarding placement of restraints, and retaliation. Although vague as to the timing of any of these alleged deprivations, the Complaint appears to span a period of eight years, from 2011 to the present.

In sum, the allegations are devoid of specific conduct on the part of the defendants, dates upon which such deprivations purportedly occurred, or details of any event or occurrence which might provide even a scintilla of notice as to Velasco's claims.

The Complaint does include additional information regarding some of his other claims. He alleges that defendants Cavanaugh, Blue and Hawthorne prevented him from using the telephone, Doc. No. 1, Statement of Facts, ¶ 42. He alleges that defendants Aldi, Cavanaugh, Blue, Rodriguez, Semple, Salius, Fiore, Skribiski, Maiorana, Mangiafico, Robles, Tucker, Faneuff, Molden, Mudano, and Chapdelaine have used force, threat of force, duress, deceit,

7

misleading facts, and suppression of information to force him to sign a contract disguised as an "acknowledgment form," *id.*, ¶ 43. Velasco alleges that defendant Maiorana denied that Velasco was ever in Phase Three to send him to Northern, *id.*, ¶ 44, and that defendant Skribiski sexually harassed Velasco on three occasions and then, assisted by twenty other defendants, issued him a false disciplinary report for threats causing him to be sent to Northern where his personal property was stolen and where he was denied legal reference materials, freedom of movement, and access to telephones, exercise, visitation and sunlight, *id.*, ¶ 45. Although these claims provide more information, there are no allegations as to when these incidents occurred or which identify the facility in which Velasco was confined when the incident occurred. In addition, the Statement of Facts refers to only ten defendants and the claims listed above reference seventeen defendants. Thus, at best, Velasco has not described any actions taken by over 100 of the defendants.

For all of these reasons, the Court concludes that the complaint fails to meet the pleading requirements of Rule 8. The Complaint shall be dismissed without prejudice to allow the Plaintiff the opportunity to replead his claims with the requisite factual specificity.

**Statute of Limitations**

Because the Complaint appears to include allegations dating back to 2011, the Court also addresses the statute of limitations. The limitations period for filing a section 1983 action in Connecticut is three years. *Thompson v. Rovella*, 734 F. App'x 787, 788-89 (2d Cir. 2018); *see also Lounsbury v. Jeffries*, 25 F.3d 131, 134 (2d Cir. 1994) (analyzing available state limitations periods and determining that appropriate limitations period for section 1983 actions filed in Connecticut is three years).

Velasco signed his Complaint on May 28, 2019. It was scanned and emailed to the court the same day. Prisoner complaints are considered filed on the day the prisoner gives the complaint to prison officials for mailing or, in this case, electronic filing. *See Dory v. Ryan*, 999 F.2d 679, 682 (2d Cir. 1993) (holding that a *pro se* prisoner complaint is deemed filed ad of the date the prisoner gives the complaint to prison officials to be forwarded to the court), *opinion modified on reh'g on other grounds*, 25 F.3d 81 (2d Cir. 1994).

While the federal court looks to state law to determine the applicable limitations period, federal law controls when the cause of action accrues. *See Wallace v. Kato*, 549 U.S. 384, 388 (2007). Under federal law, a cause of action accrues—and the statute of limitations begins to run—"when the plaintiff can file suit and obtain relief." *Id.* (internal quotation marks and citation omitted). Thus, the Court must determine when Velasco possessed sufficient facts about the harm done to him that reasonable inquiry would reveal the cause of action. *See United States v. Kubrick*, 444 U.S. 111, 122-24 (1979). The Court "should look to 'the time of the … act, not the point at which the consequences of the act become[] painful.'" *Coronado v. City of New York*, No. 11CV5188-LTS-HBP, 2014 WL 4746137, at *3 (S.D.N.Y. Sept. 24, 2014) (quoting *Eagleston v. Guido*, 41 F.3d 865, 871 (2d Cir. 1994)).

At this juncture, and as noted above, Velasco's claims are so vague as to render it impossible to determine the extent to which his claims might be barred by the statute of limitations. Some of his allegations do fall within the limitations period, but they are so factually

9

deficient, the court cannot discern whether they should proceed at this juncture. The Court includes a discussion of the limitations period so that Velasco is aware of it when repleading.[2]

**Conclusion**

The Complaint is dismissed in its entirety without prejudice to repleading. Velasco is directed to file an Amended Complaint clearly identifying the claims he intends to pursue in this case. He shall indicate which defendants are involved in each claim and allege facts describing the actions taken that demonstrate each defendant's involvement and when these actions occurred. Velasco is further advised to consider Federal Rule of Civil Procedure 20 when drafting his Amended Complaint. Rule 20 permits joinder of multiple defendants in one action only if "any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions and occurrences, and any question of law or fact common to all defendants will arise in the action." Fed. R. Civ. P. 20(a)(2). The court notes, for example, that Velasco's sexual harassment and telephone access claims appear wholly unrelated to each other and most of the other general allegations in the Complaint.

**Orders**

---

[2] The Court also takes judicial notice of a Settlement Agreement and Release from *Velasco v. Halpin*, No. 3:11-cv-463(JCH) (D. Conn. Apr. 6, 2018). *See Kramer v. Time Warner, Inc.*, 937 F.2d 767, 774 (2d Cir. 1991) (documents filed with the court are subject to judicial notice); *Loccenitt v. Pantea*, No. 12 Civ. 1356(AT), 2014 WL 7474232, at *2 (S.D.N.Y. Dec. 29, 2014) (court could take judicial notice of stipulation of dismissal and release because both documents appear on the pubic docket). Velasco filed a copy of the Settlement Agreement and Release as an exhibit to Doc. No. 133, Consent Motion to Terminate Settlement. The release appears on its face, to releases the State of Connecticut and all current and former officers and employees from "any and all actions, causes of action, suits, claims, controversies, damages and demands of every nature and kind" accruing on or before the date of the release. Velasco signed the release on April 4, 2018. Thus, it may be that Velasco's claims, to the extent they accrued before April 4, 2018, are also barred. The court does not undertake an examination of that issue on its review pursuant to Section 1915A.

Velasco may file Amended Complaint on or before August 15, 2019. Failure to timely file an Amended Complaint that complies with this Order may result in the dismissal of this action.

Velasco shall utilize the Prisoner Efiling Program when filing his Amended Complaint.

**SO ORDERED** at Bridgeport, Connecticut, this 10th day of July, 2019.

/s/ Kari A. Dooley
Kari A. Dooley
United States District Judge